## MANCOURT–WINTERS COAL CO. v. SILBERMAN et al.

(Circuit Court of Appeals, Sixth Circuit. July 29, 1920.)

No. 3372.

Corporations ☞473—Finding as to delivery of bonds sustained by evidence.
A finding by a master, concurred in by the trial court, that bonds of defendant corporation were delivered to complainant only tentatively in contemplation of an arrangement for credit which was never consummated, and that the bonds remained in fact unissued, *held* sustained by the evidence, including allegations of complainant's own pleading.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit by the Mancourt-Winters Coal Company against the St. Clair Paper Company and Samuel Silberman, its receiver. From an order (260 Fed. 330) denying the ownership of certain bonds of defendant corporation, complainant appeals. Affirmed.

Arthur P. Hicks and Henry C. Walters, both of Detroit, Mich. (Walters & Hicks, of Detroit, Mich., on the brief), for appellant.

Wallace T. Stock, of Schenectady, N. Y. (Lewis & Kelsey, of New York City, on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. The sole question presented by this appeal is whether, at the time the receiver was appointed for the St. Clair Paper Company, its mortgage bonds, to the amount of $6,500, were lawfully held by the Mancourt-Winters Coal Company as security for the merchandise indebtedness to it, or whether the delivery of the possession of the bonds to the coal company had been only tentative, contemplating an arrangement upon which the minds of the parties never met, so that the bonds were, in legal effect, still in the treasury of the paper company. Upon this issue of fact there was conflicting testimony, and a finding by the master that there had been no effective delivery. This finding was confirmed by the District Court. If in truth, when the bonds were received by the coal company, it intended and determined to keep them as security for past-due debts, the proofs so strongly tend to show acquiescence by the paper company that we would feel compelled, in spite of the concurrent findings below, to consider seriously whether the conclusion was rightful—the matter of a contract to be implied from acquiescence by one party in the stated terms of another not having been directly considered below.

However, the intent of the coal company to treat these bonds as finally issued and delivered to it is at the basis of this theory, and, under the pleadings, there is no room for its maintenance. Of the $100,000 of mortgage bonds, $87,000 had been issued and sold long before the controversy arose. Out of the remaining $13,000 of bonds unissued, the paper company undertook to use $6,500 in making a contract with the coal company for further credit. It is clear that, if this contract

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was not thus consummated by an effective delivery and the meeting of minds, $87,000 still remained the total of the bonds issued, while, if the $6,500 of bonds had been delivered and accepted in a binding way, the total was $93,500. The coal company filed the bill upon which the receiver was appointed, and in this bill it twice alleged that $87,000 was the amount of the bonds which had been issued, and its own merchandise claim is apparently included in the unsecured class. When, several months later, the complainant undertook to prove its claim secured by these $6,500 of bonds, it was obliged to take the contrary position to that assumed in the bill of complaint. As a matter of pleading, it cannot be permitted to do so; and, as a matter of evidence, the allegation of the bill is sufficient to show that the coal company had not received and did not then hold the bonds with the intent which it later claimed to have.

The order below must be affirmed.